IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

Case No. **3:26-cv-00174**

P2B TRADING CO. INC.,
a New Jersey Corporation

      Plaintiff,

v.

GOOGLE, LLC,
A Delaware limited liability company,

      Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff, P2B Trading Co. Inc. (hereinafter "Plaintiff") sues Defendant Google, LLC (hereinafter "Defendant") and alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.    For more than 50 years, Plaintiff and its predecessors have built their business, reputation, and goodwill around the "GEMINI" name and have continuously used it in commerce in the highly competitive consumer electronics market. The "GEMINI" mark is not merely a brand asset, but the core identity under which Plaintiff has earned the trust of retailers and consumers across generations. Defendant's conduct threatens not just a product line, but the continued ability of Plaintiff to operate under the name that defines its business.

2.      This is an action for Defendant's knowing and willful infringement of Plaintiff's incontestable U.S. Trademark Registration No. 2,169,039 for "GEMINI" for use in connection with speakers and wireless headphones, among other listed goods.

3.      Of most pressing concern, in October of 2025, Defendant announced that it is launching its own "GEMINI" branded speaker and that the same is "Coming Spring 2026." <u>See</u> below.



4.      Defendant already sells other home speakers through the same retail channels where Plaintiff sells its "GEMINI" speakers, including in this District. Upon information and belief, Defendant's "GEMINI" speakers are expected to sell through those same overlapping channels of trade.

5.      If Defendant is permitted to sell a speaker under the "GEMINI" name, Defendant's extraordinary market power will immediately and permanently overwhelm Plaintiff and its registered trademark rights, causing Plaintiff to lose control of its trademark and irreparably harming Plaintiff's business, including damaging Plaintiff's goodwill and the customer relationships that it and its licensees rely upon.

6. Plaintiff seeks immediate injunctive relief to prevent the irreversible loss of control over its trademark caused by Defendant's impending product launch.

7. Defendant also sells wireless headphones and other devices which infringe on Plaintiff's rights in the "GEMINI" trademark.

8. Finally, Defendant's Trademark Registration No. 5,489,150 for "GEMINI" should be cancelled due to Plaintiff's seniority of rights in connection with "GEMINI" in international class 009.

## PARTIES

9. Plaintiff, P2B Trading Co. Inc., is a duly organized New Jersey corporation.

10. Defendant, Google LLC is, upon information and belief, a Delaware limited liability company that is registered to do business within the state of Florida.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. §§ 1114 and 1125. This Court also has supplemental jurisdiction over Plaintiff's claims arising under common law or the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a) because the claims are so related to Plaintiff's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts

12. Venue is appropriate in this District under 28 U.S.C. § 1391(b) in so much as Defendant sells the infringing products in this District, Defendant markets the infringing products to consumers in this District, and because the confusion is likely

to occur in this District. Defendant is expected, upon information and belief, to sell its "GEMINI" speaker through the same channels of trade that it sells its existing speakers, which includes retail vendors in this District. Plaintiff's "GEMINI" branded goods are also sold in this District to consumers who are likely to be confused by Defendant's conduct. Accordingly, a substantial part of the events or omissions giving rise to the claims occurred or will occur in this District.

13.     The Court has personal jurisdiction over Defendant because Defendant is registered to do business with the Florida Secretary of State, Division of Corporations. In addition, through its sale and marketing of infringing products to consumers in this District, Defendant's wrongful acts are occurring in this District and the harmful effects thereof occurred in this District.

## FACTUAL BACKGROUND

### Plaintiff's "GEMINI" Trademark

14.     Plaintiff owns:

    a.  U.S. Trademark Registration No. 2,169,039 for "GEMINI" for use in connection with "sound mixers, digital samplers, audio mixers, karaoke machines, compact disc players, phonograph turntables, **loudspeakers**, stereo amplifiers, sound preamplifiers, **wireless headphones** and professional phonograph turntables and carrying cases for phonograph turtables [sic], sound mixers, compact disc players, phonograph records

and compact discs" in international class 009. See Exhibit A (emphasis added).

b. U.S. Trademark Registration No. 6,754,651 for "GEMINI SOUND" for use in connection with "**Retail store services and online retail store services in the field of consumer electronics**, specifically, of the following goods: sound mixers, digital samplers, audio mixers, karaoke machines, compact disc players, phonograph turntables, **loudspeakers**, stereo amplifiers, sound preamplifiers, **wireless headphones** and professional phonograph turntables and carrying cases for phonograph turntables, sound mixers, compact disc players, phonograph records and compact discs" in international class 035. See Exhibit B (emphasis added).

c. U.S. Trademark Application No. 99/091,238 for "GEMINI" for use in connection with "**Headphones; headsets; wireless headsets and headphones; lifestyle headphones and headsets**; power banks; power strips; power cables; HDMI cables; aux cables; display ports; charging docks; wireless keyboards; keyboards with red, green and blue light-emitting diodes (RBG lighting); mice with RGB lighting; gamer headsets; gamer headsets with RGB lighting; RGB desk mats; RGB USB hubs; ring lights; gaming holders and stands; microphone holders and stands; controller holders and stands; monitor mountings; stereo stands and

mountings; smart phone holders and grips; smart phone cases; earbud cases; microphones; speaker holders, stands and mountings" in international class 009. See Exhibit C (emphasis added).

15.     Plaintiff's Registration No. 2,169,039 for "GEMINI" has been registered since June 30, 1998 – before Defendant was founded.

16.     Plaintiff's "GEMINI" trademark is arbitrary in so much as it neither suggests nor describes any ingredient, quality, or characteristics of the goods offered by Plaintiff.

17.     Plaintiff's Registration No. 2,169,039 for "GEMINI" is incontestable and under binding Eleventh Circuit authority is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong trademark.

18.     Plaintiff's common law rights in and to "GEMINI" for use in connection with speakers date back to its founding in 1974. See Exhibit D (https://www.geminisound.com/pages/company).

19.     Plaintiff, through its predecessors in interest, has continuously used the "GEMINI" trademark in the sale, marketing and promotion of speakers and related audio equipment since 1974. Plaintiff's continuous use of the "GEMINI" trademark for use in connection with headphones dates back at least to 1989.

20.     Plaintiff is also the owner of trademark registrations for "GEMINI" covering speakers and a variety of related goods and services in at least the following foreign jurisdictions: Argentina, Australia, Brazil, Canada, Colombia, Ecuador, UK,

the European Union, Honduras, Israel, Jamaica, New Zealand, Panama, Paraguay, Peru, South Africa, and Taiwan.

21.   Plaintiff has consistently policed its rights in the "GEMINI" trademark and remains the exclusive owner and controller of the "GEMINI" mark for speakers in the United States.

22.   Plaintiff's "GEMINI" speakers are offered for sale nationwide, including in the Middle District of Florida through brick-and-mortar and online vendors such as Target, Home Depot, Guitar Center, Lowe's, Office Depot, Best Buy, Amazon.com, BJ Wholesale Club, HSNi, LLC, BrandsMart, Macy's, Aaron's, Rent-A-Center, Walmart Stores, and Sam's Club stores.

23.   Plaintiff's "GEMINI" speakers are sold to two primary audiences:

   a.   "GEMINI" Home Audio and Outdoor Audio products are designed for everyday consumer use rather than premium or luxury applications. "GEMINI" Home Audio and Outdoor Audio products have been particularly successful in wholesale club and rent-to-own channels, including, but not limited to BJ's Wholesale Club, Sam's Club, Aaron's, and Rent-A-Center.

   b.   "GEMINI" Pro Audio and DJ products primarily serve entry-level users, hobbyists, and part-time operators performing for audiences under 1,000 people. These products are sold through musical instrument and DJ-specific retailers, as well as national e-commerce platforms such as Amazon and other major retailers.

24.     Plaintiff's "GEMINI" speakers are marketed through a mix of traditional and online marketing methods including promotion at industry tradeshows such as the Consumer Electronics Show in Las Vegas, Nevada and the TRIB Meeting of the Minds event, through catalogues, point of sales displays inside of brick-and-mortar retail establishments, Google Ads, Meta Ads, YouTube videos, social media content including Facebook and Instagram, X (formerly Twitter) and on TikTok.

25.     Plaintiff has maintained a booth at the Las Vegas Consumer Electronics Show ("CES"), with limited interruptions, since approximately 1978, and without interruption at live events since 2015. In that time, Plaintiff has consistently displayed, marketed, and offered its "GEMINI" speakers and headphones at the show.

26.     CES is one of the largest consumer electronics trade shows in the world, occupying multiple venues, featuring thousands of exhibitors, and drawing approximately 140,000 attendees annually. Companies routinely use CES to make major product announcements, giving the show an outsized influence on consumer electronics market trends for the year ahead.

27.     Attendees at CES include not only exhibitors and members of the media, but also retail decision makers and potential wholesale buyers of Plaintiff's "GEMINI" speakers and headphones, who would merchandise and distribute the "GEMINI" products for sale through retail channels.

28.     Plaintiff also markets its "GEMINI" products through a variety of other industry tradeshows.

29.     Plaintiff's "GEMINI" speakers routinely retail from $29.95 to $499.95, depending on the model. Popular models like the "Gemini® BeatGrip Magnetic Bluetooth Speaker" and the "Gemini® GNV-60" retail for $49.95 and $129.95 respectively. See Exhibits E and F. Plaintiff's "GEMINI" speakers are designed to seamlessly connect to smartphones, allowing consumers to manage music, calls, and voice assistants without reaching for their phones. The "Gemini® BeatGrip Magnetic Bluetooth Speaker," in particular, has a built-in microphone to access for use for phones and AI Assistants.

30.     Plaintiff also sells a variety of "GEMINI" branded headphones including "earbud" style wireless headphones that, like its speakers, are designed to seamlessly connect to smartphones. Among these product offerings are the Gemini® GEBX-100 which typically retails for $19.95 and the Gemini® GEBX-200 which typically retails for $24.95. See Exhibit G and H.

31.     The market for speakers has evolved since Plaintiff began using "GEMINI" in connection with speakers over 50 years ago.

32.     Today, there is a growing expectation that speakers, like most consumer electronics, include some level of artificial intelligence technology. For example, leading competitive brands market their speakers as including "AI Vocal Removal" (https://www.amazon.com/soundcore-Wireless-Microphones-Playtime-Bluetooth/dp/B0DCJV2PVW/), "AI-Powered Personalization" (lg.com/global/newsroom/news/media-entertainment-solution/lg-electronics-expands-xboom-by-will-i-am-lineup-for-every-lifes/), or simply as "AI party

speaker[s]" ([Anker's 'AI party speaker' can automatically remove vocals for karaoke nights](#)). <u>See</u> Composite Exhibit I.

33.    In or about 2008, a predecessor in interest of Plaintiff launched software under the name "Gemini GROOVE" featuring early forms of AI-driven audio analysis, including an Auto BPM feature that automatically analyzed audio signals to calculate and assign tempo values.

34.    In 2016, Plaintiff's immediate predecessor in interest introduced music management software called "GEMINI V-CASE," which remains available for download for Mac and Windows today.

35.    As with most modern speaker and audio equipment providers, Plaintiff provides firmware updates for its products, including software updates for Gemini SDJ-4000, Gemini MDJ, Gemini DRP-1, and Gemini PMX-10, and software drivers for Gemini ASIO and SLATE products. Software has long been a part of Plaintiff's business, and Plaintiff is actively planning and developing expanded software offerings in the audio space that will include additional AI functionality in some capacity.

36.    Plaintiff's "GEMINI" products, including its speakers, contain numerous advanced audio-processing technologies currently referred to in the consumer electronics and professional audio industries as artificial intelligence or "AI," such as the automatic analysis of beat, tempo, and frequency to drive synchronized lighting effects, and real-time vocal removal for karaoke and performance applications.

37.     Plaintiff's "GEMINI" products, including speakers, DJ players, and headphones, are also designed with Bluetooth connectivity to connect and communicate with smartphones and other voice assistant enabled devices.

38.     Today, consumers can pair Plaintiff's "GEMINI" branded Bluetooth speakers with Android smartphones and other voice-assistant-enabled devices, activate Defendant's AI assistant by voice command, and instruct the assistant to play music or perform other tasks, resulting in audio output delivered through Plaintiff's "GEMINI" speakers.

39.     The above scenario might unfold with, for example, a consumer connecting Plaintiff's "Gemini® BeatGrip Magnetic Bluetooth Speaker" to a Google Pixel smartphone, activating Defendant's AI assistant by saying "Hey Google," instructing the assistant to "play *Happy Birthday*," thereby causing the "GEMINI" speaker to play the requested music.

40.     In this ordinary usage scenario, consumers are simultaneously interacting with Defendant's "Gemini" AI while receiving output through Plaintiff's "GEMINI" branded hardware, creating a substantial likelihood that consumers will mistakenly believe the products are affiliated, integrated, sponsored by, or originate from a common source.

## Background Regarding Defendant's Infringing Product

41.     An artificial intelligence assistant, or simply, an "AI assistant," is a software program using artificial intelligence and other components that, through applicable hardware like smartphones, earbuds/headset devices, and microphone enabled speakers, is able to understand user voice commands and perform tasks, answer questions, and provide personalized support like setting reminders, and running applications like Spotify, Amazon Music, or YouTube Music to play music of the users choice.

42.     Defendant introduced its own early version of an AI assistant in 2016, then known as the "Google Assistant." The Google Assistant ran primarily through the contemporaneously launched line of Google "NEST" speakers.

43.     On or about February 6, 2023, Defendant launched a new and separate AI assistant, then called "BARD." "BARD," like the Google Assistant before it, would run through "NEST" speakers, and other compatible devices like smartphones and earbuds. However, the "BARD" did not immediately replace the Google Assistant.

44.     Upon information and belief, and based on Defendant's statements in other litigation, Defendant began using the "Gemini" name in connection with a generative AI chatbot as early as December 6, 2023, and on February 8, 2024, Defendant formally rebranded "BARD" as "GEMINI."

## Escalating Confusion

45.     On or about December 26, 2024, counsel for Defendant wrote to counsel for Plaintiff because Defendant's efforts to register "GEMINI" in Mexico and South Africa had been rejected by those countries' respective trademark offices citing Plaintiff's "GEMINI" trademark. Defendant's counsel wished to negotiate a coexistence agreement with Plaintiff concerning use of the "GEMINI" trademark.

46.     While counsel for the parties were discussing likelihood of confusion between the parties' respective products, Plaintiff attended the January 2025 CES.

47.     Plaintiff's booth at the 2025 CES was within visual distance of a booth prominently featuring Defendant's "Google TV" products manufactured and sold by a strategic partner of Defendant. See photo below.



48.     During the course of the 2025 CES Plaintiff's staff was approached by attendees inquiring about Plaintiff's affiliation, sponsorship, or connection with Defendant, particularly in light of the 2024 rebrand of Defendant's BARD AI assistant to GEMINI.

49.     Over the course of several months, and following the confusion documented at the 2025 CES, discussions between the parties expanded to include Plaintiff's U.S. trademark rights. On June 20, 2025, Plaintiff's counsel sent Defendant a letter advising that "[Google's] adoption and use of the trademark GEMINI for its AI chatbot software and consumer electronics products incorporating the same constitutes federal trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)" of Plaintiff's registered "GEMINI" trademark. See Exhibit J.

50.     Upon information and belief, Defendant's products, including its existing home speakers and its infringing earbuds, are sold to consumers in this District, including through brick-and-mortar retailers such as Target, Rent-A-Center, Buddy's Home Furnishing, Aaron's, BrandsMart, and Best Buy and through in-store pickups at retailers like Home Depot.

51.     In response, on June 25, 2025, counsel for Defendant stated that "Google has no plans to use Gemini as a trademark for the audio equipment and software ICD provides or has provided," and further claimed that Google "remains committed to peacefully coexisting with ICD[1] and others that use the Gemini mark." See Exhibit K.

52.     Notwithstanding Defendant's June 25, 2025 assertions, on or about, August 20, 2025, Defendant announced that it would begin replacing the Google Assistant with its newer "GEMINI" AI assistant and would offer the "GEMINI" AI

---

[1] "ICD" refers to Innovative Concepts and Design LLC, a company related to Plaintiff who is also Plaintiff's predecessor in interest in and to Plaintiff's subject trademark registrations.

assistant through a suite of consumer electronics products. In support of this announcement, Defendant released a variety of promotional content including the following image prominently showing "GEMINI" in connection with wireless headphones/earbuds in a video advertisement for the product:



53. In October of 2025, and with knowledge of Plaintiff's trademark rights, Defendant started advertising a Google Home Speaker, branded "with Gemini" for release in "Spring 2026." <u>See</u> Exhibit L.

54. On or about January 15, 2026, a senior Google executive publicly confirmed that Google is deliberately expanding the "GEMINI" brand from software into physical consumer electronics for the home. In a public LinkedIn post announcing hiring for Google's Gemini team, the executive stated that the team is "bringing Gemini's intelligence out of the app and into the physical home," referenced the "early launch of Gemini for Google Home," and explained that Google is "reimagining how AI interacts with the physical world," including through "Nest Cams, Speakers,

Displays, [and the] Home App." These statements reflect Google's own characterization of "GEMINI" as a unified source identifier spanning apps, devices, and services, and confirm that Google intends consumers to associate "GEMINI" not merely with software, but with physical home speakers and related consumer electronics. <u>See</u> Exhibit M.

55.     Upon information and belief, the Google Home Speaker branded "with Gemini" will be sold to consumers in this District through the same channels of trade that Defendant currently uses to sell its existing suite of products.

56.     Defendant's current rollout of "GEMINI" is not limited to software that merely routes through a user's smartphone via Bluetooth or a companion app. Defendant has begun deploying GEMINI as a native, device-level AI assistant embedded directly into audio hardware through firmware integration, including in Pixel earbuds. In these products, GEMINI is not passively accessed from a phone, but instead operates at the hardware level, handling assistant functionality as part of the device itself. This shift demonstrates that Defendant is moving GEMINI deeper into the audio hardware stack, transforming it from an app-based service into an integrated feature of consumer audio products, and signals that speakers are an imminent and intended surface for native GEMINI deployment.

57.     To date, and upon information and belief, Defendant has rolled out the native integration of "GEMINI" into smartphones and earbuds, but not yet on speakers. Defendant announced speaker integration will begin in spring of 2026.

58.     Defendant's use of "with Gemini" in its advertisement for the forthcoming home speaker is trademark use. For example, Defendant is the owner of Trademark Registration No. 5,489,150 for "GEMINI" for use in connection with smart phones. On or about December 11, 2024, Defendant filed a specimen of use in order to establish continuing use in commerce of the "GEMINI" mark in connection with smart phones, and the USPTO accepted that specimen. <u>See</u> Exhibit N. The December 11, 2024 specimen of use and the current announcement of the forthcoming spring release of Defendant's home speaker "with Gemini" are reproduced below for reference (red box in the picture original to Defendant's filing).



59.     Both of the above include "GEMINI", both show the subject product, both include pricing, and both include blue buttons in the upper right hand corner and the lower left inviting consumers to buy the product or otherwise to "get notified" in the case of the forthcoming home speaker. The primary difference is that the home speaker announcement features "GEMINI" in substantially larger font and without the potential modifier "with" otherwise seen in "with Gemini."

60.     On November 11, 2025, counsel for Plaintiff sent counsel for Defendant correspondence advising that the launch of the home speaker "with Gemini" would encroach into Plaintiff's core product categories, the same is causing Plaintiff irreparable harm, Defendant's conduct "will expose Google to liability for damages for its willful trademark infringement" and that initial download data available on the Google Play store suggests that if Defendant launches the home speaker as advertised, "a massive and costly corrective advertising campaign would be required to make ICD whole." <u>See</u> Exhibit O.

61.     Since Defendant's October 2025 announcement of its planned "Gemini" speaker line expansion, Plaintiff and its wholesalers have experienced measurable market disruption, including a sharp increase in the cost of acquiring customers through branded search advertising, with the weighted average cost-per-click for "GEMINI" search terms increasing by approximately 15% between September 2025 and January 2026, and the cost-per-click for "GEMINI speaker" queries increasing by approximately 14% over the same period, demonstrating escalating marketplace confusion and competitive interference even before Defendant's product launch.

62.     Following Defendant's recent "GEMINI" branded product announcements and launches, Plaintiff and its wholesalers have observed material changes in consumer search behavior, as reflected in Google Trends data over the past twelve months. Overall search interest in "GEMINI" has increased significantly. Searches for "GEMINI Earbuds" show a pronounced increase following Defendant's entry into that product category.

63.     Historically, search interest in "GEMINI Home" and "GEMINI Speaker" remained relatively stable. Both terms increased materially immediately after Defendant publicly announced its planned "GEMINI" speaker and home-device rollout, even though the speaker has not yet shipped.

64.     These shifts demonstrate that Defendant's use of the GEMINI mark is already reshaping consumer behavior, increasing competition for "GEMINI" branded search terms, displacing Plaintiff in search rankings, and driving up advertising costs independent of any product launch.

65.     Exacerbating confusion, industry reports and messaging from those within Google suggest that Defendant is expected to replace the existing wake word for its AI assistant, "hey Google," with "hey Gemini."

66.     If and when Defendant adopts "hey Gemini" as the wake word for its AI assistant, consumers will be confronted with a product ecosystem in which they purchase a speaker bearing the "GEMINI" mark on its packaging, address the device by calling it "Gemini," and use it to play music, further collapsing any distinction

between Defendant's products and Plaintiff's long-established "GEMINI" speakers in the minds of consumers.

67.    Defendant presents "GEMINI" to consumers as a unified source identifier across AI services, consumer electronics and smartphones, thereby erasing the product–service distinction on which trademark separation depends. With the launch of the Defendant's home speaker with "GEMINI", Defendant will add speakers to the suite of goods for which the product–service distinction for "GEMINI" will be erased.

**Similarity of Goods, Consumers, and Channels of Trade**

68.    Plaintiff's and Defendant's products are sold to the same class of consumers through the same channels of trade.

69.    One example of the overlap in channels of trade between Plaintiff's "GEMINI" speakers and Defendant's existing home speaker is that both products are available for purchase from Walmart and for pickup at the same Walmart store in this District. See Composite Exhibit P.

70.    Plaintiff's and Defendant's products are marketed to the same class of consumers and fall within overlapping consumer price ranges.

71.    For example, both Plaintiff's "GEMINI" GNV-60 Portable Party Speaker 60W Bluetooth speaker, which retails for approximately $129.95, and Defendant's Nest Audio smart speaker with Google Assistant, which retails for approximately $90.00, are offered for sale through Walmart. Id. The listings for both products emphasize sound quality for use as music speakers. Plaintiff's product listing

highlights "clear highs and powerful bass response [which] ensures your music fills the space," while Defendant's listing emphasizes "[h]ear[ing] music the way it should sound, with crisp vocals and powerful bass that fill the room." Id. Defendant's forthcoming home speaker marketed "with GEMINI" is similarly priced, with a pre-sale advertised price of $99.99, and is promoted based on its "brilliant sound." Id.

72.     Plaintiff and Defendant both heavily market their respective products on the Internet.

73.     Today, if a consumer searches Google for "gemini speaker," the first two natural (i.e., not paid) results will be Defendant's and Plaintiff's speakers, in that order. A screenshot, captured by the undersigned on January 19, 2026 showing these results is reproduced below.



74.     Without having even sold a single speaker "with Gemini" yet, and as a function of its overwhelming market power, Defendant has already overtaken Plaintiff as the top natural hit when a consumer searches the most popular search engine in the world for Plaintiff's goods, i.e., "Gemini speaker."

75.    Upon information and belief, if Defendant is permitted to launch its infringing "GEMINI" home speaker, Defendant will permanently dominate search results for "Gemini speaker," displacing Plaintiff in the primary channel through which modern consumers discover and purchase audio products, while simultaneously driving up the cost of keyword advertising for "GEMINI" search terms. This will cause irreversible loss of control over Plaintiff's trademark in the marketplace and inflict competitive harm that cannot be adequately remedied by damages alone.

76.    Defendant is already displacing Plaintiff in connection with use of "GEMINI" and wireless headphones like earbuds. For example, a search on Google conducted by the undersigned on January 20, 2026 for the term "gemini earbud" returned the following:



77. As seen above, Defendant has already captured the first result generated by Google when a potential consumer searched for Plaintiff's "GEMINI" mark in connection with the modern name of goods covered by Plaintiff's incontestable trademark registration (i.e., "earbuds" are a variety of "wireless headphones").

**The USPTO Already Found Relatedness of Goods and Likelihood of Confusion**

78. On November 3, 2025, the United States Patent and Trademark Office issued an Office Action refusing registration of Plaintiff's Application No. 99/091,238 for "GEMINI" for use in connection with "Headphones; headsets; wireless headsets and headphones; lifestyle headphones and headsets; power banks; power strips; power cables; HDMI cables; aux cables; display ports; charging docks; wireless keyboards; keyboards with red, green and blue light-emitting diodes (RBG lighting); mice with RGB lighting; gamer headsets; gamer headsets with RGB lighting; RGB desk mats; RGB USB hubs; ring lights; gaming holders and stands; microphone holders and stands; controller holders and stands; monitor mountings; stereo stands and mountings; smart phone holders and grips; smart phone cases; earbud cases; microphones; speaker holders, stands and mountings."

79. The basis of the November 3, 2025 Office Action was likelihood of confusion with Defendant's Registration No. 5,489,150 for "GEMINI" for use in connection with "smart phones."

80. In the Office Action, the USPTO found that "[i]n this case, applicant's electronics are related to registrant's smart phones because it is common for the same entity to provide the relevant goods. Specifically, please see the attached Internet

evidence from Google, Apple, and Samsung showing entities that provide the relevant goods and market them under the same mark. Thus, applicant's and registrant's goods are considered related for likelihood of confusion purposes." Accordingly, the USPTO has determined that Plaintiff's "GEMINI" goods, including wireless headsets and Defendant's "GEMINI" smart phones are "considered related for likelihood of confusion purposes."

<u>**Actual Confusion at the 2026 CES and Beyond**</u>

81.     Plaintiff attended and maintained a booth at the 2026 CES at which Plaintiff promoted its "GEMINI" products, including its "GEMINI" branded speakers and earbuds.

82.     For the 2026 CES, Google's product was featured by TCL Technology Group Corp. ("TCL"), who was displaying Google TV with Gemini in apparent partnership with Defendant. See below.



83.     Upon information and belief, TCL manned its booth at the 2026 CES with its own employees as well as with affiliates of Defendant.

84.     TCL is a well-known strategic partner of Defendant. For example, in January of 2025, Yahoo Finance reported that "TCL Electronics, a leading consumer

electronics brand and the world's top two TV brand, announced at CES 2025 that it is deepening its partnership with Google TV and will launch all-new Google TVs with Gemini capabilities in 2025, promising to transform home entertainment with immersive and intelligent features." <u>See</u> Exhibit Q.

85.    Predictably, the proximity of TCL and Plaintiff's "GEMINI" booth at the 2026 CES generated actual confusion.

86.    During the 2026 CES, Plaintiff documented instances of confusion including statements from CES attendees who said, "could I ask what is your relationship with Google," "but what do you have to do with Google," and whether "this speaker was made by Google."

87.    In response to a request for feedback from visitors at its 2026 CES booth, Plaintiff received two electronic messages that demonstrated actual, or potential confusion. On January 8, 2026 [redacted]@openai.com wrote to Plaintiff that "Curiosity drive and passion for generative AI technology wins my heart." And, on January 7, 2026, [redacted]@gmail.com wrote to Plaintiff that "I thought it is related with Gemini 3 ai."

88.    Defendant's use of "GEMINI" as described above is likely to confuse, and is confusing, consumers as to the source, sponsorship, or affiliation of goods or services bearing the "GEMINI" trademark, and is causing Plaintiff irreparable harm.

89.    Absent immediate, temporary, preliminary, and ultimately permanent injunctive relief, the harm caused by Defendant is expected to overwhelm Plaintiff's

trademark rights and cause Plaintiff to lose control over and the value of its 52 year old trademark rights.

## COUNT I
## FEDERAL TRADEMARK, 15 U.S.C. § 1114
### (Reverse Confusion)

90.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 89 as though set forth herein.

91.     Defendant is not merely branding an AI assistant. It is collapsing software, hardware, wake-words, APIs, and retail devices into a single consumer-facing source identifier ("GEMINI"), such that consumers no longer distinguish AI assistant vs. speaker, software vs. device, or service vs. product.

92.     Plaintiff is the owner of valid, subsisting, and incontestable U.S. Trademark Registration No. 2,169,039 for the mark "GEMINI" in connection with speakers, wireless headphones, and related audio equipment.

93.     Plaintiff, through its predecessors in interest, has continuously used the "GEMINI" trademark in connection with speaker, headphones, and related audio equipment since 1974.

94.     Defendant, without the consent of the Plaintiff, has knowingly announced the launch of a new line of speakers marketed under the "GEMINI" mark or otherwise as being "with Gemini." Defendant's announcement informs consumers that the new line of speakers is "coming spring 2026," has announced availability and pricing and provides a "Get notified" option for consumers.

95. Defendant is infringing upon Plaintiff's registered trademark rights by and through its sale of other electronic goods "with Gemini" in addition to the above alleged speaker sales.

96. Plaintiff's "GEMINI" trademark is conceptually strong as an arbitrary trademark.

97. Plaintiff's incontestable registered "GEMINI" trademark is presumed to be at least descriptive with acquired distinctiveness, and therefore strong.

98. The parties' respective marks are identical in so much as both use "GEMINI."

99. Defendant's use of its famous "GOOGLE" housemark alongside the "GEMINI" mark increases the likelihood of confusion in this reverse confusion case, because consumers are more likely to believe that Plaintiff's senior "GEMINI" products are affiliated with, sponsored by, or originate from Defendant's corporate identity.

100. The goods offered by the parties under the "GEMINI" mark are effectively identical in so much as both offer speakers to consumers for home use, and both offer said speakers at similar price points.

101. As determined by the USPTO, even the non-speaker goods offered by the parties under the "GEMINI" mark are related for the purpose of likelihood of confusion.

102. The actual sales methods used by the parties in connection with products offered under the "GEMINI" trademark are the same or similar. For example, both

parties' respective speakers can be purchased through Walmart and Home Depot. <u>See</u> Composite Exhibit P and R.

103.   Both parties promote their "GEMINI" products through the same advertising channels. For example, both parties products are featured at the Las Vegas Consumer Electronics Show and TRIB Meeting of the Minds Show.

104.   In 2025, Plaintiff's CES booth was adjacent to a booth prominently branded with Defendant's housemark "GOOGLE." In 2026, Plaintiff's booth was adjacent to one of Defendant's strategic partners offering "GEMINI" AI enabled consumer electrics products.

105.   Upon information and belief, Defendant has prior knowledge of Plaintiff's trademark rights, has the intent to obtain market saturation, and otherwise has acted with improper intent.

106.   Plaintiff has encountered, and documented in this Complaint, instances of reverse confusion with respect to the parties' use of the "GEMINI" trademark.

107.   Defendant's unauthorized use in commerce of the "GEMINI" mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Plaintiff's goods bearing the "GEMINI" mark, and is likely to cause consumers to believe that Plaintiff's goods bearing the "GEMINI" mark are sold, authorized, endorsed, or sponsored by Defendant, or that Defendant is in some way affiliated with Plaintiff. Defendant's conduct therefore constitutes trademark infringement in violation of the Lanham Act.

108. Defendant, without the consent of the Plaintiff, has knowingly infringed upon Plaintiff's registered rights in its "GEMINI" trademark.

109. Plaintiff is the commercially smaller, but senior user of the "GEMINI" trademark.

110. Defendant, or its parent company, is reported to be, as of the date of this Complaint, one of the largest publicly traded companies in the world by market capitalization.

111. Defendant is the junior and infringing user of the "GEMINI" trademark.

112. As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages and irreparable harm.

113. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)

114. Plaintiff incorporates by reference the allegations of paragraphs 1 through 89 as though set forth herein.

115. Plaintiff is the owner of valid and protectable trademark rights in the "GEMINI" mark through longstanding federal registration and continuous use in

commerce since at least 1974 in connection with speakers, headphones, and related audio equipment.

116. Plaintiff's "GEMINI" mark is strong and distinctive, both conceptually and commercially, and is widely recognized in the consumer electronics marketplace.

117. Defendant, without Plaintiff's consent, is using the identical "GEMINI" mark in commerce in connection with overlapping and closely related consumer electronics products, including speakers, smartphones, earbuds, and other audio-enabled devices.

118. Defendant's use of the "GEMINI" mark is likely to cause confusion, mistake, or deception among consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods and services.

119. Defendant's conduct is likely to cause consumers to mistakenly believe that Defendant's "GEMINI" branded products originate from, are associated with, sponsored by, or otherwise affiliated with Plaintiff.

120. Defendant's use of the "GEMINI" mark is occurring in the same channels of trade and is directed to the same class of consumers as Plaintiff's "GEMINI" branded products.

121. Defendant adopted and expanded its use of the "GEMINI" mark with knowledge of Plaintiff's prior rights and the likelihood of confusion, and in disregard of Plaintiff's objections.

122. Defendant's actions constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

123. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm, including loss of control over its reputation and goodwill, for which there is no adequate remedy at law.

124. Plaintiff is entitled to injunctive relief, monetary damages, Defendant's profits, enhanced damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT III
## FEDERAL TRADEMARK, 15 U.S.C. § 1114
### (Forward Confusion, in the Alternative)

125. Plaintiff incorporates by reference the allegations of paragraphs 1 through 89 as though set forth herein.

126. Plaintiff is the owner of valid, subsisting, and incontestable U.S. Trademark Registration No. 2,169,039 for the mark "GEMINI" in connection with speakers, wireless headphones, and related audio equipment.

127. Plaintiff has priority of rights in the "GEMINI" mark through continuous use in commerce since at least 1974.

128. Defendant, without Plaintiff's consent, is using the identical "GEMINI" mark in commerce in connection with overlapping and closely related consumer electronics products, including speakers and other audio-enabled devices.

129. Defendant's use of the "GEMINI" mark is likely to cause confusion, mistake, or deception among consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods.

130. Defendant's conduct is likely to cause consumers to believe, incorrectly, that Defendant's "GEMINI" branded products originate from, are associated with, sponsored by, or otherwise affiliated with Plaintiff.

131. Defendant's infringing use occurs in the same channels of trade and is directed to the same class of consumers as Plaintiff's "GEMINI" branded products.

132. Defendant adopted and expanded its use of the "GEMINI" mark with knowledge of Plaintiff's prior rights and with disregard for the likelihood of confusion.

133. Defendant's unauthorized use of the "GEMINI" mark constitutes trademark infringement in violation of 15 U.S.C. § 1114.

134. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm, including loss of control over its goodwill and reputation.

135. Plaintiff is entitled to injunctive relief, monetary damages, Defendant's profits, enhanced damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT

136. Plaintiff incorporates by reference the allegations of paragraphs 1 through 89 as though set forth herein.

137. Plaintiff is the owner of valid and protectable common law trademark rights in the "GEMINI" mark through continuous and exclusive use in commerce

since at least 1974 in connection with speakers, headphones, and related audio equipment.

138.    Plaintiff's common law rights in the "GEMINI" mark predate Defendant's use of the mark in connection with consumer electronics products.

139.    Defendant, without Plaintiff's consent, has used and is using the "GEMINI" mark in commerce in connection with overlapping and closely related consumer electronics products.

140.    Defendant's use of the "GEMINI" mark is likely to cause confusion, mistake, or deception among consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods and services.

141.    Defendant's conduct is likely to cause consumers to believe, incorrectly, that Defendant's "GEMINI" branded products originate from, are associated with, sponsored by, or otherwise affiliated with Plaintiff.

142.    Defendant adopted and expanded its use of the "GEMINI" mark with knowledge of Plaintiff's prior rights and in disregard of the likelihood of confusion.

143.    Defendant's conduct constitutes common law trademark infringement under Florida law.

144.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

145.    Plaintiff is entitled to injunctive relief, monetary damages, and all other relief available under Florida common law.

## COUNT V
## CANCELATION OF REGISTRATION NO. 5489150
### (Based on Likelihood of Confusion and Prior Use)

146.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 89 as though set forth herein.

147.    Plaintiff is the owner of senior trademark rights in the "GEMINI" mark through continuous use in commerce since at least 1974 in connection with speakers, headphones, and related audio equipment.

148.    Plaintiff is also the owner of U.S. Trademark Registration No. 2,169,039 for the mark "GEMINI" in International Class 009, which has been registered since 1998 and is incontestable.

149.    Defendant is the owner of U.S. Trademark Registration No. 5,489,150 for the mark "GEMINI" in connection with "smart phones."

150.    Defendant's Registration No. 5,489,150 was issued despite Plaintiff's prior and superior rights in the "GEMINI" mark.

151.    Defendant's registered "GEMINI" mark is identical to Plaintiff's senior "GEMINI" mark.

152.    Defendant's registered goods are identical or closely related to Plaintiff's goods, and are marketed to the same class of consumers through the same channels of trade.

153.    Defendant's registration and use of the "GEMINI" mark is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of the parties' goods.

154.    The United States Patent and Trademark Office already determined that Plaintiff's "GEMINI" goods and Defendant's "GEMINI" smart phones are related for likelihood of confusion purposes.

155.    Because Plaintiff's prior rights predate Defendant's registration and because Defendant's registered mark is likely to cause confusion with Plaintiff's senior mark, Registration No. 5,489,150 was improperly granted.

156.    Defendant's Registration No. 5,489,150 therefore constitutes a cloud on Plaintiff's senior trademark rights and should be cancelled pursuant to 15 U.S.C. § 1119.

157.    Plaintiff has been and will continue to be damaged by the continued existence of Registration No. 5,489,150.

158.    Plaintiff is entitled to an order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 5,489,150.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, and grant the following relief:

A. Enter temporary, preliminary, and permanent injunction(s) prohibiting Defendant, its officers, agents, servants, employees, and all persons acting in concert with them from using the "GEMINI" mark, or any confusingly similar mark, in connection with consumer electronics products or services, including but not limited to in connection with speakers, home speakers, and wireless headphones such as earbuds;

B. Order cancellation of U.S. Trademark Registration No. 5,489,150 pursuant to 15 U.S.C. § 1119;

C. Award Plaintiff its actual damages sustained as a result of Defendant's unlawful conduct;

D. Award Defendant's profits attributable to its infringement;

E. Award enhanced damages and profits to the extent permitted by law;

F. Award Plaintiff its reasonable attorneys' fees and costs;

G. Award prejudgment and post-judgment interest as permitted by law; and

H. Grant such other and further relief as the Court deems just and proper.


**TRIAL BY JURY IS HEREBY DEMANDED ON ALL ISSUES SO TRIABLE**

Dated: January __29th__, 2026

Respectfully submitted,

**JIMERSON BIRR, P.A.**

By: _/s/ Gustavo Sardiña_
Gustavo Sardiña
Florida Bar No.: 31162
gsardina@jimersonfirm.com
Cassidy Mandelbaum
Florida Bar No.: 1069803
cmandelbaum@jimersonfirm.com
701 Riverside Park Place
Jacksonville, FL 32204
Telephone: (904) 389-0050
Facsimile: (904) 212-1269
emmaa@jimersonfirm.com
*Attorneys for Plaintiff*